1  LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
2  CHRISTOPHER D. BEATTY (State Bar No. 266466)
cbeatty@millerbarondess.com
3  SEAN G. McKISSICK (State Bar No. 261657)
smckissick@millerbarondess.com
4  EVAN B. MCGINLEY (State Bar No. 320433)
emcginley@millerbarondess.com
5  MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
6  Los Angeles, California 90067
Telephone:   (310) 552-4400
7  Facsimile:    (310) 552-8400
8

9  Special Litigation Counsel for Plaintiff and
Chapter 7 Trustee Richard A. Marshack
10

11

12          **UNITED STATES BANKRUPTCY COURT**

13    **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

14

15  In re                                    **CASE NO. 8:18-bk-13311-SC**

16  RUBY'S DINER, INC., a California          Chapter 7
corporation, et al.,
17                                            (Jointly Administered With Case Nos.
            Debtor(s).                        8:18-bk-13197-SC; 8:18-bk-13198-SC;
18                                            8:18-bk-13199-SC; 8:18-bk-13200-SC;
    Affects:                                  8:18-bk-13201-SC; 8:18-bk-13202-SC)
19
        All Debtors
20      RUBY'S DINER, INC., ONLY             **COMPLAINT FOR:**
        RUBY'S SOCAL DINERS, LLC,
21  ONLY                                     **1)  BREACH OF FIDUCIARY
        RUBY'S QUALITY DINERS,                   DUTY;**
22  LLC,
    ONLY                                     **2)  AIDING AND ABETTING
23      RUBY'S HUNTINGTON                         BREACH OF FIDUCIARY
    BEACH,                                        DUTY;**
24  LTD., ONLY
        RUBY'S LAGUNA HILLS,                 **3)  AVOIDANCE OF ACTUAL
25  LTD.                                          FRAUDULENT TRANSFERS
    ONLY                                          UNDER 11 U.S.C. § 548(a)(1)(A);**
26      RUBY'S OCEANSIDE, LTD.,
    ONLY                                      **4)  AVOIDANCE OF
27                                                CONSTRUCTIVE
28                                                FRAUDULENT TRANSFERS**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

RUBY'S PALM SPRINGS, LTD.,
ONLY

UNDER 11 U.S.C. § 548(a)(1)(B);

5) **RECOVERY OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 550 and 551;**

6) **AVOIDANCE AND RECOVERY OF ACTUALLY FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 544 AND CAL. CIV. CODE § 3439.04;**

7) **AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 544 AND CAL. CIV. CODE § 3439.05;**

8) **RECOVERY OF ILLEGAL DIVIDENDS UNDER CAL. CORP. CODE §§ 500, 501 and 506;**

9) **EQUITABLE SUBORDINATION OF CLAIMS UNDER 11 U.S.C. § 510(c);**

10) **PERMANENT INJUNCTION UNDER CAL. CIV. CODE § 3439.07(a)(3)(A);**

11) **PERMANENT INJUNCTION UNDER CAL. CIV. CODE § 3439.07(a)(3)(C);**

12) **BREACH OF CONTRACT;**

13) **MONEY LENT;**

14) **OPEN BOOK ACCOUNT;**

15) **VIOLATION OF CAL. PENAL CODE § 496(c);**

16) **ACCOUNTING;**

17) **CONSTRUCTIVE TRUST; AND**

18) **MISAPPROPRIATION OF TRADE SECRETS**

**[DEMAND FOR JURY TRIAL]**

RICHARD A. MARSHACK, Chapter 7 Trustee,

        Plaintiff,

v.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   DOUGLAS CAVANAUGH, an
2   individual; RALPH KOSMIDES, an
    individual; BEACHCOMBER
3   MANAGEMENT CRYSTAL COVE,
    LLC, F/K/A RUBY'S
4   MANAGEMENT LLC, a California
    Limited Liability Company;
5   LIGHTHOUSE CAFÉ, LLC, a
    California Limited Liability Company;
6   BEACHCOMBER AT CRYSTAL
7   COVE, LLC, a California Limited
    Liability Company; and SHAKE
8   SHACK CRYSTAL COVE, LLC,
    F/K/A RUBY'S SHAKE SHACK,
9   LLC, a California Limited Liability
10  Company,

11                  Defendants.

12         Plaintiff Richard Marshack, solely in his capacity as Chapter 7 Trustee (the

13  "Trustee") of the Bankruptcy Estate (the "Estate") of Ruby's Diner, Inc., a

14  California corporation, *et al.* jointly administered on September 5, 2018, as lead

15  case no. 8:18-bk-1331-SC ("RDI" or the "Company"), with the following

16  associated bankruptcy cases: (a) 8:18-bk-13197-SC – Ruby's SoCal Diners, LLC, a

17  Delaware limited liability company ("SoCal Diners"); (b) 8:18-bk-13198-SC- Ruby

18  Quality Diners, LLC., a Delaware limited liability company; (c) 8:18-bk-13199-SC

19  – Ruby's Huntington Beach, Ltd., a California limited partnership; (d) 8:18-bk-

20  13200-SC – Ruby's Laguna Hills, Ltd., a California limited partnership; (e) 8:18-

21  bk-13201-SC – Ruby's Oceanside Ltd., a California limited partnership; and

22  (f) 8:18-bk-13202-SC – Ruby's Palm Springs, Ltd., a California limited partnership

23  (collectively referred to as the "Debtors") alleges as follows:

24                    **JURISDICTION AND VENUE**

25         1.     This Court has jurisdiction over this adversary proceeding and the

26  parties thereto under 28 U.S.C. §§ 157 and 1334.  This adversary proceeding arises

27  out of and is related to the Chapter 7 bankruptcy case of *In re Ruby's Diner, Inc.*,

28  Case No. 8:18-bk-13311-SC, filed on September 5, 2018, and currently pending in

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

the United States Bankruptcy Court for the Central District of California, Santa Ana Division. This action is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Trustee consents to the entry of a final judgment by the bankruptcy court.

2.    Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the RDI bankruptcy case is pending in this district and division. Pursuant to 28 U.S.C. § 1391, venue is also appropriate in this district and division because each of the Defendants either resides in or is authorized to and regularly does carry out business in this district and many if not all of their wrongful acts, omissions and/or conduct as complained of in this Complaint took place within this district.

3.    These same facts constitute additional grounds for this Court to exercise personal jurisdiction over each of the Defendants.

## **NATURE OF THE ACTION**

4.    RDI owned and operated the Ruby's Diner restaurant chain. Ruby's Diners are marked by a 1940s aesthetic and serve classic Americana diner fare. The first Ruby's Diner opened in Southern California in 1982; Ruby's quickly grew to encompass over 40 locations.

5.    RDI was founded by Defendants Doug Cavanaugh ("Cavanaugh") and Ralph Kosmides ("Kosmides"), its only shareholders. Cavanaugh and Kosmides have also served as RDI's key officers since its inception and controlled RDI's Board of Directors at all relevant times. In short, Cavanaugh and Kosmides have exercised exclusive control and direction over RDI for the entirety of its existence.

6.    Up until the appointment of the Trustee, RDI was akin to an incapacitated child, with no means, because of the control exerted over it, to protect itself from Cavanaugh and Kosmides' corporate looting and malfeasance. Pursuant to the adverse domination doctrine, claims against Cavanaugh and Kosmides are tolled during the time they controlled the Company, as they would not be expected

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   to sue themselves.  As a result, up until the appointment of the Trustee in April

2   2020, the statute of limitations tolled as to any and all claims RDI has against

3   Cavanaugh and Kosmides.  In addition, because the IRS is a creditor, the statute of

4   limitations for the claims alleged herein as to all parties is at least ten years from

5   the date of the bankruptcy filing.

6       7.      The victims of Cavanaugh and Kosmides' malfeasance are creditors

7   owed in excess of fourteen million dollars.

8       8.      Cavanaugh and Kosmides placed RDI assets into other personal

9   ventures owned in their individual capacities, deliberately stripping RDI of assets

10   without adequate consideration and in breach of their fiduciary duties to RDI and

11   the Debtors so they could wrongfully enrich themselves.  Cavanaugh and Kosmides

12   diverted the best corporate opportunities to themselves while leaving RDI and the

13   Debtors liable for debts incurred regarding these stolen opportunities.  According to

14   Cavanaugh in one email, he needed to be a "free agent" when it came to the ability

15   to personally pursue opportunities presented to RDI.

16       9.      For example, Cavanaugh used RDI's know-how, history, personnel,

17   and money to obtain an opportunity from the State of California to develop two

18   restaurants, The Beachcomber and The Shake Shack, both located in Crystal Cove

19   State Park in Newport Coast, California.  The bid documents submitted to the State

20   of California state that "Ruby's" or "Ruby Restaurant Group" was pursuing the

21   opportunity and would operate the restaurants.  But after the bids were won and the

22   time came to create the entities that would hold these two restaurants, Cavanaugh

23   and Kosmides inexplicably put the restaurants in their personal ownership.  They

24   did similar things with respect to the restaurants Lighthouse and Malibu

25   Beachcomber.

26       10.     After usurping these opportunities from RDI, Cavanaugh and

27   Kosmides continued to use significant RDI resources and personnel to run these

28   restaurants in which RDI had no interest.  RDI paid insurance premiums, wages,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

and other expenses for these restaurants and continued to do so even post-petition. The result of this structure is that RDI has incurred significant liabilities over the years propping up restaurants it has no interest in.  Cavanaugh and Kosmides did this to boost the profits of their other restaurants.  That way they could distribute more money to themselves from these other restaurants rather than pay RDI creditors what they are owed.

11.    Cavanaugh and Kosmides also used RDI funds to pay their personal medical expenses, travel and meals.

12.    And Cavanaugh and Kosmides took over $1.5 million in loans from RDI, which sat on the books of the Company for more than a decade.  Then two months before they put RDI into bankruptcy, Cavanaugh and Kosmides tried to hide this significant asset from the bankruptcy court by wiping their personal loans off the books for no consideration.  This was a fraudulent transfer and, with prejudgment interest, Cavanaugh and Kosmides owe in excess of $3 million as a result.

13.    In total, Cavanaugh and Kosmides caused damages in excess of $35 million.  It is time for them to take responsibility for their actions.

## **PARTIES**

14.    Plaintiff is the Chapter 7 bankruptcy trustee of the Debtors, as detailed in the introductory paragraph above.  The Trustee brings this adversary proceeding on behalf of the Debtors' respective bankruptcy estates.  The Trustee does not have personal knowledge of the pre-bankruptcy facts alleged in this Complaint and therefore alleges those facts on information and belief.

15.    Defendant Douglas Cavanaugh ("Cavanaugh") is an individual who, on information and belief, resides in California.

16.    Defendant Ralph Kosmides ("Kosmides") is, on information and belief, an individual who resides in Orange County, California.

17.    On information and belief, Defendant Beachcomber Management

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  Crystal Cove, LLC, f/k/a Ruby's Management LLC, is a limited liability company

2  with its principal place of business in Newport Beach, California.

3    18.   On information and belief, Defendant Lighthouse Café, LLC is a

4  limited liability company with its principal place of business in Newport Beach,

5  California.

6    19.   On information and belief, Defendant Beachcomber at Crystal Cove,

7  LLC is a limited liability company with its principal place of business in Newport

8  Beach, California

9    20.   On information and belief, Defendant Shake Shack Crystal Cove, LLC,

10  f/k/a Ruby's Shake Shack, LLC, is a limited liability company with its principal

11  place of business in Newport Beach, California.

12    21.   Defendants Beachcomber Management Crystal Cove, LLC; Lighthouse

13  Café, LLC; Beachcomber at Crystal Cove, LLC; and Shake Shack Crystal Cove,

14  LLC may be referred to collectively as the "Non-Debtor Entities."

15    22.

16  ## GENERAL ALLEGATIONS

17  **A.   Overview Of RDI**

18    23.   The original Ruby's Diner opened in 1982 in Newport Beach,

19  California.  The diner was intended to re-create the mood and décor of a 1940s

20  diner.  The restaurant was successful, and the company began to open additional

21  locations throughout California and expand into other states.

22    24.   RDI is the owner of the Ruby's® trademarks, system and intellectual

23  property (the "Marks and Intellectual Property").  RDI granted an exclusive license

24  of the Marks and Intellectual Property for lack of reasonably equivalent value to

25  Ruby's Franchise Services, Inc. ("RFS"), which at all relevant times was owned by

26  Cavanaugh and Kosmides.  RFS, in turn, at all relevant times, served as the

27  franchisor to the Ruby's® franchisees/licensees (the "Franchisees") and licensed

28  the Marks and Intellectual Property from RDI as licensor to Ruby's® Diner

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1 franchisees.

2   25.   RDI owns varying percentages of and operates diners in Southern

3 California through its subsidiaries, including through its wholly owned subsidiary,

4 SoCal Diners.  RDI and its affiliates own, operate and manage restaurants under

5 trade names such as "Ruby's®," "Ruby's® Diner," and "The Ruby Restaurant

6 Group."

7   26.   One of RDI's primary purposes is to test out new restaurant concepts.

8 It has, under the direction of Cavanaugh, tested out numerous restaurants over the

9 years.

10   **B.**   **RDI'S Longtime Insolvency**

11   27.   From the point of at least 2005, RDI's debts exceeded its assets.  In or

12 about 2005, RDI began to issue unsecured notes in an effort to raise funds,

13 ultimately raising about $5.6 million from over 200 noteholders, who were

14 primarily retail investors solicited by Cavanaugh and Kosmides about RDI's

15 prospects.  The noteholders generally are comprised of retirees.

16   28.   Cavanaugh and Kosmides took actions to conceal RDI's precarious

17 financial condition.  RDI:

- Never had its financial statements audited by an independent certified public accounting firm.
- Lacked qualified personnel to serve as full-time, sophisticated internal finance and accounting personnel (including persons qualified to act as the Company's chief financial officer and internal auditor) to monitor RDI's business and financial books and records.
- Kept two separate, and inconsistent, sets of books for the Company.
- Lacked sufficient funds to continue its operations.
- Lacked a bank revolving line of credit to cover operating costs, as needed.
- As least as early as 2009, had an ongoing gift card program (representing a $4.4 million obligation) for meals at Ruby's® Restaurants sold through third-party retailers (primarily Costco) for which RDI was unable to reimburse its franchisees for the costs imposed by these gift cards.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    29.    By February 2010, Cavanaugh was informed by RDI personnel that

2    "Ruby's is literally living on borrowed time and each day it gets worse."  That

3    email was sent on a day that RDI's accounts started with a balance of negative

4    $137,000.

5    30.    By early 2012, RDI lacked sufficient cash flow to pay its unsecured

6    notes, in part because of significant litigation liabilities that it incurred.  RDI

7    restructured the unsecured notes.

8    31.    At about the same time, in February 2012, RDI borrowed $2.9 million

9    more, secured by RDI's assets, from 90 of the original noteholders.

10    32.    Several years of continuing losses resulted in RDI suspending interest

11    payments on both the secured and unsecured notes in early 2015, resulting in a

12    default.  The noteholders, still hoping to see a return on their investments,

13    restructured the notes in June 2016.  Under the terms of the restructuring, the

14    maturity of the notes was extended until June 30, 2026, and interest in the amount

15    of 2.23% was to be paid on the notes each June and December until maturity.

16    33.    By July 2015, Defendants conceded that "the equity in RDI is

17    hopelessly buried today."

18    34.    Though RDI made the required interest payments in June and

19    December 2017, it defaulted on the notes again in June 2018.

20    35.    At the time of bankruptcy, RDI owed approximately $5.54 million to

21    its unsecured noteholders, and approximately $2.985 million to its secured

22    noteholders.

23    36.    As explained in detail below, the financial condition of RDI was

24    preventable.  Cavanaugh and Kosmides systematically misappropriated the

25    Debtors' most significant assets and inappropriately placed liabilities from their

26    other business ventures onto RDI.

27    **C.    <u>Allegations Regarding Tolling</u>**

28    37.    The allegations in this Complaint arise from Cavanaugh and Kosmides'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   breaches of fiduciary duties.

2       38.   At all relevant times, Cavanaugh and Kosmides controlled RDI by

3   virtue of their majority status of the board of directors, as CEO of RDI

4   (Cavanaugh), and as the majority shareholders.  Today, Cavanaugh owns 60% of

5   RDI shares, while Kosmides owns 40%.

6       39.   In particular, in 1991, Cavanaugh and Kosmides entered into an

7   agreement with each other that the majority shareholder (Cavanaugh) would always

8   vote the majority of the board of directors, which he did at all relevant times.  RDI

9   has been wholly under the domination of Cavanaugh and Kosmides throughout the

10  entirety of its existence.

11      40.   As a result, the doctrine of adverse domination tolls any statutes of

12  limitations for the claims for relief alleged below.  RDI was akin to an

13  incapacitated child for the decades that Cavanaugh and Kosmides looted its assets,

14  with no legal ability to protect itself from its owners' misconduct.  *San Leandro*

15  *Canning Co. v. Perillo*, 211 Cal. 482, 487 (1931) (in allowing corporation to pursue

16  claims against former directors, recognizing "what we deem to be a well-settled

17  principle of law, that the statute of limitations does not commence to run against

18  unlawful acts and expenditures made by or under the direction of the directors of

19  the corporation while they were in full control of its affairs and of the expenditure

20  of its funds"); *In re Cecchi Gori Pictures*, 607 B.R. 351, 355 (Bankr. N.D. Cal.

21  2019) (accord).

22      41.   In addition, the Internal Revenue Service (the "IRS") was a creditor of

23  the Debtor as of the Petition Date.  On September 11, 2018, the IRS filed a claim

24  against RDI for unpaid taxes totaling $85,260.35.  Plaintiff, as Chapter 7 trustee,

25  may exercise all of the rights and remedies available to a qualifying creditor of the

26  Debtor pursuant to 11 U.S.C. § 544(b), including the IRS.  The IRS may recover a

27  fraudulent transfer of a taxpayer for ten years after the date of assessment.

28  *Mukamal v. Citibank N.A. (In re Kipnis)*, 555 B.R. 877, 881 (Bankr. S.D. Fla.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    2016); 26 U.S.C. § 6901(a); 26 U.S.C. § 6502(a)(1).  Plaintiff may stand in the

2    shoes of the IRS to recover fraudulent transfers.

3        **D.**    **Cavanaugh And Kosmides Usurp RDI's Opportunity At Crystal**

4        **Cove**

5        42.  Crystal Cove State Park is located on the coast in Orange County

6    between the communities of Newport Beach and Laguna Beach.  It includes more

7    than three miles of scenic coastline.  The Park contains some of the last remaining

8    undeveloped coastal property in Orange County, historic beach cottages, scenic

9    upland canyons and ridges, coastal bench landers and bluffs, excellent swimming

10    beaches, and significant offshore marine features.[1]

11        43.  Until 1979, the Crystal Cove State Park land was privately owned by the

12    Irvine Company.  Community members were concerned that the Irvine Company

13    would build a massive high-end resort on the property destroying the historic beach

14    cottages and limiting public access.  The community successfully persuaded the

15    State of California to acquire the land.  In December 1979, the land was deeded by

16    the Irvine Company to the State of California.  In the early 1980s, the mid-point of

17    the Park's three-mile line coastline, which consists of 46 cottages on 12.3 acres,

18    was put on the National Register of Historic Places.

19        44.  In 2005, the State of California Resources Agency, Department of Parks

20    and Recreation, issued a Request for Proposals for Historic District Lodging and

21    Restaurants at Crystal Cove State Park (the "Request for Proposals").  The Request

22    for Proposals solicited proposals for an award of a twenty (20) year concession

---

[1] The allegations in paragraphs 42 to 55 are substantially, and often verbatim, taken from a complaint filed by Beachcomber Management in 2017, which was controlled by Cavanaugh and Kosmides at the time and which Cavanaugh refers to as "my entity."  These allegations are therefore binding allegations as to Beachcomber Management, Cavanaugh, and Kosmides. The usurpation of these opportunities also could not have been discovered until these stunning admissions were made in a public pleading in 2017.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  agreement to: (1) restore the historic beach cottages in a manner preserving their

2  look and feel for rental to the public at a reasonable price on an overnight basis;

3  (b) develop and operate two restaurants reflecting the period of 1935-55; and

4  (c) provide related visitor services.

5      45. As stated in the Request for Proposals, the State's intent was "to provide

6  the public with high-quality, reasonably priced goods and services in an authentic

7  manner and atmosphere that enhances the visitor's experience and understanding of

8  the historic period of 1935-55 . . . ."  The State required that all concession facilities

9  and services reflect the look, feel, and ambiance of Southern California during this

10  era, and indicated its intent to evaluate proposals based on the extent to which they

11  successfully recreated this era.

12      46. In light of RDI's success and expertise with Ruby's Diners from that

13  same era, Cavanaugh decided to respond to the State's Request for Proposals.

14  Cavanaugh initially pursued this opportunity in the name of RDI.

15      47. Before submitting his own bid to the State, however, Cavanaugh learned

16  that the Crystal Cove Association ("CCA") also intended to respond to the Request

17  for Proposals.  Cavanaugh had several meetings with CCA to discuss the possibility

18  of working together to submit a joint response to the State's Request for Proposals.

19      48. Cavanaugh conducted these negotiations on behalf of RDI.  For example,

20  in an email dated July 29, 2005, CCA advised Cavanaugh and Kosmides, "GREAT

21  job on the questions!  We will copy you back on the final submittal to State Parks.

22  We will state that these are coming jointly from CCA and Ruby's."  In an email

23  dated December 20, 2005, Dan Gee of CCA stated that, "For the first year or

24  longer, I will act as the interface between NewCo, RRG, and State Parks."

25      49. RRG is a short form moniker for Ruby's Restaurant Group, a name

26  Cavanaugh and Kosmides used for RDI.  Ruby's, Ruby's Diners, RRG and Ruby's

27  Restaurant Group were used interchangeably throughout the bidding process and all

28  refer to RDI.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

477268

COMPLAINT

Case No. 8:18-bk-13311-SC

50. RDI's involvement was further reflected in a Memorandum of Understanding dated October 7, 2005, which stated in part: "Crystal Cove Alliance (CCA) and the Ruby Restaurant Group (RRG) have agreed to cooperate and jointly bid on the concession contract for the Crystal Cove Historic District which is being offered by the State of California-Resource Agency for the Department of Parks and Recreation (DPR)."

51. RDI and CCA submitted a joint bid to the State in October 2005. Among other things, the joint bid included: (a) a proposed operation plan emphasizing the role of RDI in food service operations and feting RDI's track record in developing and operating historically-accurate high-quality diners; (b) a proposed facility plan telling the story of the original Ruby's Diner on the Balboa Pier as relevant and analogous to the situation at the Historic District; and (c) a proposed education/interpretative plan which described RDI as "uniquely qualified to meet the requirements for food service under the contract," citing RDI's lengthy and successful history in developing and operating diners from the same historical period as the Historic District.

52. All of these documents reflect RDI's involvement in the bidding. The Operating Plan states:

- "The Ruby's Restaurant Group will be subcontracted by NewCo to perform all of the food service operations under the contract."

- "CCA and Ruby's are uniquely qualified to implement an effective customer service plan. Ruby's is known for their very successful customer service. Also, the Ruby's Diner theme is the same time period that CCA will be establishing in the Historic District. As a result, Ruby's already demonstrates on a day to day basis their ability to operate an effective customer service program that focuses on the same historical period."

- "Good service. Due to the remote location . . ., Ruby's plans on an

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

aggressive marketing and public relations campaign.  Ruby's also firmly believes that high quality operations foster positive word of mouth.  When you combine this attractive venue with high quality food and operations, you have a combination that will sell itself.  The number one trust mark of the Ruby's Diner brand is the milkshake. Ruby's is confident that the Shake Shack[2] co-branded with the Ruby's Diner brand will significantly increase sales without significant advertising."

53. The Facilities Plan emphasized RDI's experience and importance to the Historic District as well:

- Includes a photograph of the original Ruby's Diner on Balboa Pier.
- Expressly provides, in relevant part: "The Ruby's Diner Balboa story is relevant, because it is fairly analogous to the situation . . . .  At Ruby's in Balboa, people have to brave an equivalently long walk out a long, and often, very cold pier . . . .  That didn't stop them because the venue was unique, the food was good, and they got a good value for their dollar.  RRG firmly believes this same principle can work . . . ."

54. The Interpretative Plan similarly emphasizes RDI's involvement: "The Ruby Restaurant Group (RRG) is also uniquely qualified to meet the requirements for food service under the contract.  Following is a brief history of RRG . . . .  The Ruby's Restaurant Group is self-contained in nearly all aspects of restaurant operations, recruitment and personnel training, product development . . . .  The founding partners, Doug Cavanaugh and Ralph Kosmides, take an active role in the operation of each restaurant . . . ."

---

[2] The Shake Shack restaurant located at Crystal Cove was not and is not affiliated with the Shake Shack national chain of fast casual restaurants.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

55. Paragraph 58 of the Concession Agreement expressly provides for RRG to operate all food service operations under the Concession Agreement: "Assignments and Subconcessions. . . . Subject to the approval by State, Ruby's Restaurant Group will operate all food service obligations of this contract and will be a subcontractor."

56. On March 10, 2006, Cavanaugh established Ruby's Crystal Cove, LLC to act as the management company to handle the food services and other operations for The Beachcomber restaurant, as anticipated by the Concession Agreement.

57. However, in a breach of Cavanaugh and Kosmides' fiduciary duties, and notwithstanding the fact that RDI's marks, know-how, history, personnel, resources and money were used to win the bid from the State and to develop these restaurants, Cavanaugh and Kosmides put themselves personally as members of Ruby's Crystal Cove, LLC rather than making RDI the member.  Shortly thereafter, Ruby's Crystal Cove, LLC's name was changed to Beachcomber Management Crystal Cove, LLC.

58. On March 17, 2006, Cavanaugh established Beachcomber at Crystal Cove, LLC to act as the entity that owned The Beachcomber restaurant itself.  Like with Beachcomber Management, Cavanaugh and Kosmides put ownership for themselves.  In particular, they put the ownership of the restaurant in the name of Beachcomber Management, called Ruby's Crystal Cove, LLC at the time, an entity they owned personally.  This meant both the equity and right to management fees went to them personally rather than RDI, as it should have.

59. Similarly, Cavanaugh and Kosmides established the entity currently known as Shake Shack Crystal Cove, LLC to own The Shake Shack at Crystal Cove restaurant, in which Cavanaugh and Kosmides both hold or have held ownership interests.  However, unlike as with Beachcomber, RDI was made the Manager of this entity entitled to management fees (for a time).

60. The Beachcomber and Shake Shack went on to become critically and

financially successful.  For example, OpenTable, an independent surveyor of its dining members, has rated The Beachcomber at Crystal Cove as one of the top ten restaurants in Orange County, and has presented it with at least 18 awards, including awards for "Best Overall," "Best Service," "Best Value," and "Most Booked."  The Beachcomber at Crystal Cove has been named as one of the "Top 10 Outdoor Dining Restaurants in the US" by Fox News and among "America's Best Outdoor Restaurants" by Travel & Leisure magazine.  In its first five years alone, Beachcomber grossed approximately $27.5 million in sales.

61. In 2007, Douglas Salisbury ("Salisbury"), the only other shareholder of RDI at the time, threatened litigation against Cavanaugh and Kosmides for usurping the Beachcomber opportunity—but he was bought off.  Cavanaugh, Kosmides and Salisbury reached an agreement on or around December 31, 2007 in which Salisbury personally received equity in Beachcomber Management Crystal Cove, LLC in exchange for his silence on the corporate opportunity issue.  In sum, all of the shareholders of RDI were in on the scheme to put this asset in their personal ownership rather than RDI's ownership.

62.  Indeed, Cavanaugh would later accuse Salisbury of misusing "the 'corporate opportunity doctrine' to garner additional equity out of the Beachcomber in Crystal Cove with the threat of litigation if we didn't see things your way."

63. When Salisbury made requests to view Beachcomber's books and records, Cavanaugh threatened him again, saying that his "right to free equity in the Beachcomber will come into question should we go any further."

64. With Salisbury paid off, silenced, and continuing to profit himself from Cavanaugh's bad acts, there remained no shareholder who had the knowledge, ability, or motivation to discover the wrongdoing or bring suit on behalf of RDI for the usurped corporate opportunity.

65. Thus, RDI continued to be deprived of the opportunity to own and manage The Beachcomber restaurant.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

E.     **Cavanaugh And Kosmides Fraudulently Transfer Management Of Shake Shack To Themselves**

66. Initially, The Shake Shack restaurant was named "Ruby's Shake Shack," with RDI serving as a Managing Member, entitled to receive management fees. These fees were set at 8% of the restaurant's net sales, paid monthly.

67. Ruby's Shake Shack used RDI's logo, likeness, and trade secrets to operate.

68. In 2013, however, RDI was replaced as Managing Member by Beachcomber Management Crystal Cove, LLC, the same Cavanaugh-owned entity tasked with managing The Beachcomber Café and which Cavanaugh referred to as "my entity."

69. No consideration was received by RDI when it was replaced as Managing Member of Ruby's Shake Shack.

F.     **Cavanaugh And Kosmides Continued To Usurp RDI's Corporate Opportunities At Crystal Cove**

70. The Concession Agreement negotiated by CCA with the State, under which Beachcomber and Shake Shack operate as subconcessionaires, was originally set to expire in 2026. Notably, this is the Concession Agreement under which two restaurants were to be run by Ruby's Restaurant Group, but Cavanaugh and Kosmides took the opportunity for themselves rather than putting the opportunity into RDI.

71. In 2015, the State and CCA agreed to amend the Concession Agreement, by which (among other things) its term was extended for 30 years, through 2056.

72. No similar extension was granted at that time, however, to The Beachcomber and Shake Shack's Sub-SubConcession Agreement with CCA. Accordingly, The Beachcomber and Shake Shack would not be permitted to operate at Crystal Cove after 2026.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

17

COMPLAINT

1    73.    In response, Cavanaugh and Kosmides (again) chose to take this

2   opportunity for themselves.  They immediately began to negotiate with CCA –

3   again, on behalf of Beachcomber and Shake Shack, not RDI – regarding an

4   extension to the term of the Sub-SubConcession Agreement.  The negotiations went

5   poorly, even resulting in litigation.

6    74.   The parties eventually reached agreement in late 2017, however,

7   agreeing to an amendment to the Sub-SubConcession Agreement by which The

8   Beachcomber and Shake Shack would continue to operate at Crystal Cove, under

9   Cavanaugh's management, until 2056.

10    75.   This opportunity to run Shake Shack and Beachcomber through 2056

11   should have been presented to RDI, just like the initial opportunity.

12    **G.    Defendants' Breaches As To Malibu Restaurant Group**

13    76.    In or about 2007, Cavanaugh and Kosmides formed Malibu Restaurant

14   Group, LLC ("MRG").

15    77.    The purpose of MRG was to open up a Beachcomber Café, a full-

16   service, high-quality restaurant, as well as a Shake Shack, a family-style restaurant

17   with a malt shop/diner theme, on the Malibu Pier.  The restaurants opened in or

18   around 2009.

19    78.    The Managing Member of MRG was Beachcomber Management, LLC,

20   the entity controlled by Cavanaugh and Kosmides that manages Beachcomber and

21   Shake Shack.  RDI was not a member of MRG.

22    79.    From their inception, Cavanaugh and Kosmides used RDI resources,

23   manpower, and services to establish and build up the MRG restaurants.

24    80.    Cavanaugh and Kosmides used RDI funds to pay MRG's debts.  RDI

25   expended substantial funds, for example, to pay the premiums for MRG's health

26   and worker's compensation insurance.  RDI even paid the management fees that

27   MRG owed to Beachcomber Management, LLC – funds that went directly to

28   Cavanaugh and Kosmides.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

81.    Ultimately, MRG owed documented debts to RDI totaling at least $249,573.27.  This did not include payments for services and resources that went undocumented.

82.    From their opening, the MRG restaurants suffered from lackluster business and poor performance.  MRG was sued by its construction contractor for breach of contract and other claims, and was later sued by its landlord.  Though there was no reason for RDI to be involved in this litigation, RDI nonetheless incurred substantial legal fees and costs in connection therewith.

83.  RDI received either inadequate or nonexistent compensation in exchange for these resources and services.

84.    As early as February 2010, Cavanaugh was informed by RDI personnel that he should not "put another dime into Malibu as it will likely be lost."  Moreover, the attention Cavanaugh was paying to MRG was actively harming RDI: "Malibu is a traumatic distraction and that distraction is impacting Ruby's . . . ."

85.    The MRG restaurants shuttered in 2011, leaving their substantial debts to RDI unpaid.

## H.    Cavanaugh And Kosmides Usurp An Opportunity As To Lighthouse Café

86.  In 2015, Cavanaugh and Kosmides set up Lighthouse Café, LLC, a separate entity, to open the Lighthouse Café in Newport Beach, California.

87.  On February 13, 2014, the Newport Beach Restaurant Association sent out a Request for Proposal solicitation to qualified firms interested in operating and managing a commercial restaurant space to be constructed at a new Marina Park location on the Balboa Peninsula.  The objective of the Request for Proposal was to identify the most qualified applicants who could best use their restaurant expertise to manage the new restaurant.

88.  Chris Seevers of The Beachcomber at Crystal Cove forwarded the Request for Proposal to Cavanaugh.  Cavanaugh did not present the opportunity to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    RDI but instead sought to exploit the opportunity for himself and Kosmides.

2         89.    Cavanaugh knew the corporate opportunity should have gone to RDI.

3    On August 17, 2014, he wrote that he "need[s] to have the board meeting for the

4    Corporate Opportunity Doctrine matter during the week of August 25th" because

5    he did not want "to get too far over my skis on these projects before this matter is

6    addressed."

7         90.    The Managing Member of the Lighthouse Café, the entity to which

8    management fees were paid, was Beachcomber Management Crystal Cove, LLC,

9    the same Cavanaugh-owned entity that manages The Beachcomber at Crystal Cove

10    and Shake Shack at Crystal Cove.

11         91.    At all relevant times, Cavanaugh and Kosmides used RDI resources to

12    obtain the Lighthouse Café opportunity.  For example, Tad Belshe, the Executive

13    Vice President of RDI, actively devoted his time and energy into securing the

14    Lighthouse Café.  He spoke with representatives of the City of Newport Beach and

15    worked with contractors to design the restaurant.  Cavanaugh also specifically

16    directed Belshe to assist him in getting the Lighthouse Café up and running.

17        **I.**    **Defendants Prop Up Their Personal Ventures With RDI Funds**

18         92.    As if it were not enough to use RDI's resources to obtain opportunities

19    like Beachcomber, Shake Shack, and Lighthouse only to misappropriate them from

20    RDI, Defendants also regularly propped up these entities with RDI assets and

21    funds, even though Cavanaugh and Kosmides (and not RDI) received the profits

22    from such entities.

23         93.    With RDI insolvent, and additional funds going to creditors instead of to

24    them, Cavanaugh and Kosmides designed a plan to shift liabilities of Beachcomber,

25    RFS, Shake Shack, and Lighthouse to RDI, which had the effect of substantially

26    boosting profits at these other entities that they owned while inappropriately

27    saddling RDI with even more liabilities.

28         94.    Examples of this improper dumping of liabilities on RDI include:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

- RDI inexplicably made hundreds of thousands of dollars in payments on a regular basis to Beachcomber and Shake Shack.
- RDI employees would devote substantial time on Beachcomber, Lighthouse and Shake Shack matters, while all or a disproportionate portion of their salaries were paid by RDI. For example, Cavanaugh directed RDI's Chief Financial Officer, Matt Panek, to work with Beachcomber's CFO on a variety of financial projects that inured to the benefit of The Beachcomber at Crystal Cove. Tad Belshe, RDI's Executive Vice President, also consulted with and provided advisory services in support of The Beachcomber at Crystal Cove.
- Beachcomber and Shake Shack were placed on RDI's general liability, worker's compensation and health insurance policies, with RDI paying the premiums.
- RDI paid for messenger expenses on behalf of Shake Shack and Beachcomber.
- RDI paid for payroll expenses on behalf of Shake Shack and Beachcomber.
- RDI sold one of its food trucks to satisfy a debt of RFS.
- Cavanaugh and Kosmides conducted extensive business for these restaurants on the RDI server.

95. Cavanaugh and Kosmides also used their own time and energies in the operation of these personal endeavors.

96. Cavanaugh and Kosmides were and continue to be personally enriched as a result of this arrangement.

97. RDI also covered other administrative and operating expenses of The Beachcomber at Crystal Cove, including loans believed to be in excess of $600,000.

98. Though Cavanaugh and Kosmides caused RDI to make these and other

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  significant contributions to the success of these restaurants, RDI did not benefit in

2  any way from the restaurants' success.

3    **J.    RDI's Insider Payments To Kono Enterprises**

4    99.    RDI made recurring monthly payments of approximately $6,250 for

5  "consulting" from September 20, 2017 through the date of the bankruptcy petition

6  to Kono Enterprises, LLC ("Kono"), a limited liability company registered in the

7  State of California that is controlled by Kosmides.

8    100.  Prior to that, RDI made recurring, biweekly payments of approximately

9  $2,884.62 for "consulting" from August 2015 through September 2017 to Kono.

10    101.  Prior to that, RDI paid Kono recurring, biweekly payments of

11  $1,923.08 for "consulting" up through August 2015.

12    102.  In total, Kono received no less than $200,000 from RDI.

13    103.  It is unclear what, if any, benefits RDI derived in exchange for these

14  payments to Kono.  Nor is it clear how much money RDI steered into Kono.

15  Indeed, it is unclear what Kono's business is, though it is notable that Kosmides has

16  a racing team that bears the name Kono.

17    **K.    Cavanaugh And Kosmides' Excessive And Unjustified Spending**

18    **Billed To The Company**

19    104.  Cavanaugh and Kosmides engaged in a longstanding practice of using

20  RDI funds for personal expenditures unrelated to the business purpose of RDI and

21  Debtors.

22    105.  Both Cavanaugh and Kosmides, for example, frequently expensed their

23  own medical treatment to RDI.  On one expense report from December 2017,

24  Cavanaugh expensed costs relating to at least three separate medical visits (and put

25  another one on the Company credit card), including almost $700 for a rental car

26  and a stay at the Marriott.  RDI spent nearly $60,000 per year on medical bills for

27  Cavanaugh and Kosmides.

28    106.  There was no oversight for these expenses.  When his assistant

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

questioned a $3,500 charge for a surgery in November 2016, Cavanaugh refused to answer any questions and told her to "Just reimburse."

107.  In fact, per the terms of his compensation package (which he himself set), Cavanaugh was permitted to expense up to $10,000 of "business expenses" per month.

108.  Cavanaugh granted himself liberal and unsupervised access to the Company credit card.

109.  Cavanaugh regularly authorized reimbursements for himself for expensive meals, classified as "business meals," to justify the expense on any documentation.

110.  In September 2017, Cavanaugh was reimbursed over $14,000 for artwork.

## L.   Cavanaugh And Kosmides's Unpaid Personal Loans From RDI And Fraudulent Distributions

111.  To finance their lavish lifestyles, Cavanaugh and Kosmides used their control of RDI to repeatedly grant sweetheart loans and "executive advances" to themselves or for their own personal benefit.

112.  As of December 3, 2017, the following advances, loans, and loan interest to Cavanaugh and Kosmides appeared as "assets" on RDI's balance sheet (the "Personal Loans"):

| Description | Balance Sheet as of 12/3/2017 |
| --- | --- |
| DOUG CAVANAUGH | $106,018.44 |
| RALPH KOSMIDES | $16,808.38 |
| EXEC ADV-RLK 96&97 INCLUSIVE | $18,567.55 |
| EXECUTIVE ADVANCES | $70,581.85 |
| LOAN TO SHAREHOLDER-DC | $349,839.31 |
| LOAN TO SHAREHOLDER-RK | $277,685.97 |
| INTEREST ON DSC LOANS | $187,782.84 |
| EXEC ADV-DSC PRIOR YEARS | $123,545.15 |
| EXEC ADV-RLK-CURRENT | $136,720.90 |

| INTEREST ON RLK LOANS | $116,486.13 |
|---|---|
| EXEC ADV-RLK PRIOR YEARS | $95,314.98 |
| EXEC ADV-DSC-CURRENT | $191,431.37 |
| **Total** | **$1,690,782.87** |

113.   On or around July 25, 2018, less than two months before RDI initiated bankruptcy proceedings, Cavanaugh and Kosmides caused RDI to alter its books to re-characterize $1,529,991.45 of the Personal Loans as capital distributions and to "zero out" thousands of dollars in additional outstanding shareholder loans and interest.  Cavanaugh and Kosmides purported to backdate these alterations to January 2, 2017.

114.   This re-characterization was done without formal board action and approval.  Moreover, the purported reason for this re-characterization, that these were distributions all along, is contradicted by other evidence, including the fact that Cavanaugh and Kosmides did not pay taxes on these monies when they took them from RDI.

115.   At the time this reclassification occurred, Cavanaugh and Kosmides knew RDI was insolvent and that they planned to file for bankruptcy.  They took these actions to try to conceal a significant asset of RDI from the bankruptcy court.  None of the schedules or other filings submitted by Cavanaugh and Kosmides disclosed these loans or their removal from the books of the Company to the Court.

116.   Neither Cavanaugh nor Kosmides has repaid any of the Personal Loans, which remain due notwithstanding Cavanaugh and Kosmides' efforts to reclassify their personal borrowing as capital distributions in July 2018.

117.   Moreover, Cavanaugh and Kosmides purported to take these insider loans interest free, which is improper.  RDI is entitled to prejudgment interest at the statutory rate for these loans.  *See, e.g.*, *Home Sav. Bank, F.S.B. by Resolution Tr. Corp. v. Gillam*, 952 F.2d 1152, 1161 (9th Cir. 1991) (upholding award of prejudgment interest for "money improperly removed during a critical shortage of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  capital," noting that "[f]ailure to assess such interest would effectively award

2  [defendant] a severance benefit in the amount of interest gained on the money since

3  its removal from the Bank"); *United States v. Cal. State Bd. of Equalization*, 650

4  F.2d 1127, 1132 (9th Cir. 1981) ("Awards of pre-judgment interest are governed by

5  considerations of fairness, and are awarded when it is necessary to make the

6  wronged party whole." (citation omitted)), *aff'd*, 456 U.S. 901 (1982); *Monsanto*

7  *Co. v. Hodel*, 827 F.2d 483, 485 (9th Cir. 1987) ("The effect of a refusal to grant

8  prejudgment interest in this case would be to allow an interest free loan to

9  appellants on funds belonging to [another].  Disallowance of interest would

10  encourage delay in payment.").

11      118.  Moreover, the books for RDI in 2017 that Cavanaugh and Kosmides

12  prepared, while RDI was insolvent and on the verge of bankruptcy, reflect

13  additional distributions of $2,542,348.26 to Cavanaugh and $1,696,929.30 to

14  Kosmides.

## CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF
### (Against Cavanaugh and Kosmides)
### *Breach of Fiduciary Duty*

19      119.  The Trustee hereby incorporates all of the foregoing and subsequent

20  paragraphs as if alleged herein.

21      120.  As the senior officers, directors, and controlling shareholders of RDI, at

22  all relevant times Cavanaugh and Kosmides each owed the duties of a fiduciary to

23  RDI and (because RDI was insolvent at all relevant times) its creditors.  These

24  fiduciary duties prohibited Cavanaugh and Kosmides from undertaking or

25  participating in activities adverse to the interests of RDI and its creditors, and

26  obligated them to keep RDI and its creditors fully informed as to all matters

27  pertaining to their interests.

28      121.  Because Cavanaugh and Kosmides were ultimately responsible for

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  overseeing the day-to-day business operations and financial performance of RDI,

2  and supervised all aspects of its financial affairs, at all relevant times, they were

3  aware of RDI's insolvent financial condition.

4      122.  Cavanaugh and Kosmides nevertheless breached their fiduciary duties

5  to RDI and its creditors by engaging in misconduct including, but not limited to, the

6  following:

7  • Usurping the corporate opportunity to own and manage The

8     Beachcomber at Crystal Cove restaurant;

9  • Usurping the corporate opportunity to own The Shake Shack at Crystal

10     Cove restaurant;

11  • Usurping the opportunity to extend the lease in the Sub-

12     SubConcession Agreement;

13  • Transferring management of Shake Shack, along with the right to its

14     management fees, from RDI to Beachcomber Management;

15  • Using RDI funds and resources to prop up the Beachcomber Café at

16     the Malibu Pier;

17  • Usurping the corporate opportunity to own and manage the Lighthouse

18     Café;

19  • Devoting and/or transferring RDI financial resources, personnel and

20     assets to operate other restaurants, including Beachcomber, Shake

21     Shack, Lighthouse and Malibu Beachcomber;

22  • Devoting a significant portion of their time, energy, and resources to

23     the operation of the Non-Debtor Entities, to the detriment and neglect

24     of their duties at RDI;

25  • Expensing their excessive personal spending to RDI;

26  • Providing improper distributions to themselves;

27  • Granting themselves personal loans and salary advances in a manner

28     that was not in the best interest of and that damaged RDI and its

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  creditors and failing to repay their debts to the Company, and even

2  attempting to hide those debts and mischaracterize them as

3  distributions after the fact; and

4   • Granting an exclusive license agreement to RFS for lack of reasonably

5   equivalent value.

6   123.  In so doing, Cavanaugh and Kosmides caused damages to RDI in

7  excess of $35 million, plus prejudgment interest.

8   124.  The wrongful conduct of Cavanaugh and Kosmides as alleged in this

9  cause of action was willful, wanton, malicious, oppressive, outrageous and

10  fraudulent, and justifies an award of punitive damages in an amount sufficient to

11  punish said defendants and deter future conduct of this type.

12   **SECOND CLAIM FOR RELIEF**

13   **(Against the Non-Debtor Entities)**

14   ***Aiding and Abetting Breach of Fiduciary Duty***

15   125.  The Trustee hereby incorporates all of the foregoing and subsequent

16  paragraphs as if alleged herein.

17   126.  As set forth above, Cavanaugh and Kosmides breached their fiduciary

18  duties to RDI and its creditors by engaging in misconduct including, but not limited

19  to, the following:

20   • Usurping the corporate opportunity to own and manage The

21   Beachcomber at Crystal Cove restaurant;

22   • Usurping the corporate opportunity to own The Shake Shack at Crystal

23   Cove restaurant;

24   • Usurping the opportunity to extend the lease in the Sub-

25   SubConcession Agreement;

26   • Transferring management of Shake Shack, along with the right to its

27   management fees, from RDI to Beachcomber Management;

28   • Using RDI funds and resources to prop up the Beachcomber Café at

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

the Malibu Pier;

- Usurping the corporate opportunity to own and manage the Lighthouse Café;

- Devoting and/or transferring RDI financial resources, personnel and assets to operate other restaurants, including Beachcomber, Shake Shack, Lighthouse and Malibu Beachcomber;

- Devoting a significant portion of their time, energy, and resources to the operation of the Non-Debtor Entities, to the detriment and neglect of their duties at RDI;

- Expensing their excessive personal spending to RDI; and

- Granting an exclusive license agreement to RFS for lack of reasonably equivalent value.

127.  In so doing, Cavanaugh and Kosmides caused damages to RDI in excess of $35 million, plus prejudgment interest.

128.  Cavanaugh and Kosmides collectively held controlling interests in, and exercised complete control over the operations of, each of the Non-Debtor Entities. Cavanaugh and Kosmides' knowledge of and participation in these breaches of fiduciary duties may thus be attributed to each of the Non-Debtor Entities.

129.  The breaches of fiduciary duties referenced herein were committed for the benefit of the Non-Debtor Entities as well as for Cavanaugh and Kosmides. Each of the Non-Debtor Entities accepted the benefits stemming from these breaches.

130.  The Non-Debtor Entities' participation in Cavanaugh and Kosmides' breaches of fiduciary duty, as well as their acceptance of the benefits thereof, was a substantial factor in causing harm to RDI.  Indeed, without the Non-Debtor Entities, Cavanaugh and Kosmides could not have committed the breaches of fiduciary duties enumerated herein.

131.  The wrongful conduct of the Non-Debtor Entities as alleged in this

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  cause of action was willful, wanton, malicious, oppressive, outrageous and

2  fraudulent, and justifies an award of punitive damages in an amount sufficient to

3  punish said defendants and deter future conduct of this type.

4  ### **THIRD CLAIM FOR RELIEF**

5  ### **(Against Cavanaugh and Kosmides)**

6  ### ***Avoidance of Actually Fraudulent Transfers Pursuant to 11 U.S.C. §***

7  ### ***548(a)(1)(A)***

8  132.  The Trustee hereby incorporates all of the foregoing and subsequent

9  paragraphs as if alleged herein.

10  133.  As described herein, Cavanaugh and Kosmides caused RDI to make

11  transfers of Company property to themselves or for their benefit, including their

12  other restaurants, and for other purposes that were not in the best interest of RDI

13  and that damaged RDI and its creditors, including but not limited to the following

14  (collectively, the "Transferred Assets"):

15  - The corporate opportunity to own and manage The Beachcomber at

16    Crystal Cove restaurant;

17  - Their own time and efforts, as well as the time and efforts of other

18    RDI personnel, for use in establishing and operating The Beachcomber

19    at Crystal Cove restaurant;

20  - Cash and resources for use in establishing and operating The

21    Beachcomber at Crystal Cove restaurant;

22  - The corporate opportunity to own The Shake Shack at Crystal Cove

23    restaurant;

24  - The corporate opportunity to manage The Shake Shack at Crystal

25    Cove restaurant;

26  - Usurping the opportunity to extend the lease in the Sub-

27    SubConcession Agreement;

28  - Their own time and efforts, as well as the time and efforts of other

RDI personnel, for use in establishing and operating The Shake Shack at Crystal Cove restaurant;

- Cash and resources for use in establishing and operating The Shake Shack at Crystal Cove restaurant;

- Their own time and efforts, as well as the time and efforts of other RDI personnel, for use in establishing and operating the Beachcomber Café at the Malibu Pier;

- Cash and resources for use in establishing and operating the Beachcomber Café at the Malibu Pier;

- The corporate opportunity to own the Lighthouse Café;

- The corporate opportunity to manage the Lighthouse Café;

- Their own time and efforts, as well as the time and efforts of other RDI personnel, for use in establishing and operating the Lighthouse Café;

- Cash and resources for use in establishing and operating the Lighthouse Café;

- Excessive salaries and benefits to themselves that were not in the best interest of and that damaged RDI and its creditors;

- Distributions to themselves or for their benefit and for other purposes that were not in the best interest of and that damaged RDI and its creditors;

- Granting an exclusive license agreement to RFS for lack of reasonably equivalent value.

- Expenses to cover their personal spending in a manner that was not in the best interest of and that damaged RDI and its creditors; and

- Personal loans and salary advances to themselves in a manner that was not in the best interest of and that damaged RDI and its creditors and purportedly discharging this obligation and re-characterizing the loans

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    as distributions just two months before the bankruptcy filing.

2    134.  These Transferred Assets should have, and would have, been property

3    of the RDI Estate, and the debts were incurred against property that should have, or

4    would have, been property of the RDI Estate.

5    135.  RDI has been insolvent since at least 2005; that is, its debts exceeded

6    its assets since at least that time.  Cavanaugh and Kosmides were both well aware

7    that RDI was insolvent – they exercised complete control over RDI's finances.

8    Thus, at the time of the transfer of each of the Transferred Assets, RDI was

9    insolvent, or such transfers rendered RDI insolvent.

10    136.  Cavanaugh and Kosmides knew that each of the Transferred Assets

11    constituted valuable assets that could have been used to build up RDI, or, at a

12    minimum, pay off its debts.

13    137.  Rather than use the Transferred Assets for the benefit of RDI, however,

14    Cavanaugh and Kosmides used the Transferred Assets to enrich themselves and/or

15    build up other business enterprises in which they held a controlling interest.

16    138.  As detailed herein, RDI did not receive reasonably equivalent value in

17    exchange for any of the Transferred Assets.  Indeed, there was no legitimate

18    business purpose for RDI to transfer these assets.

19    139.  Cavanaugh and Kosmides' fraudulent intent is further evidenced by

20    their brazen and improper bookkeeping practices.  RDI, under the direction of

21    Cavanaugh and Kosmides, kept two sets of financial records – one that was

22    accurate, and another that painted a rosier picture of the companies' financial

23    wellbeing.

24    140.  Further, Cavanaugh and Kosmides had fraudulent intent when they, for

25    example, unilaterally recharacterized more than one and a half million dollars'

26    worth of loans to themselves as "distributions," thus "zeroing out" money they

27    themselves owed to the Company.  They made these recharacterizations at a time

28    when they already knew that RDI was headed for bankruptcy, in an attempt to hide

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1 | these assets from the bankruptcy court.

2 |     141. The circumstances surrounding the transfers and fraudulent

3 | bookkeeping practices as described herein evidence that the transfers were made,

4 | and these debts incurred, with actual intent to hinder, delay or defraud RDI's

5 | creditors.

6 |     142. These transfers and debts are thus avoidable pursuant to 11 U.S.C.

7 | section 548(a)(1)(A). The transfers are believed to be an amount in excess of $35

8 | million, subject to proof.

9 | **FOURTH CLAIM FOR RELIEF**

10 | **(Against Cavanaugh and Kosmides)**

11 | ***Avoidance of Constructively Fraudulent Transfers Pursuant to 11 U.S.C.***

12 | ***§ 548(a)(1)(B)***

13 |     143. The Trustee hereby incorporates all of the foregoing and subsequent

14 | paragraphs as if alleged herein.

15 |     144. As described herein, Cavanaugh and Kosmides caused RDI to make

16 | transfers of Company property to themselves or for their benefit and for other

17 | purposes that were not in the best interest of RDI and that damaged RDI and its

18 | creditors, including but not limited to the Transferred Assets.

19 |     145. The Transferred Assets should have, and would have, been property of

20 | the RDI Estate, and the debts were incurred against property that should have, or

21 | would have, been property of the RDI Estate.

22 |     146. RDI received less than reasonably equivalent value in exchange for the

23 | Transferred Assets.

24 |     147. For reasons described herein, RDI was insolvent at all times relevant

25 | for this action.

26 |     148. These transfers and debts had a prejudicial effect on RDI's financial

27 | condition.

28 |     149. The transfers are thus avoidable pursuant to 11 U.S.C. section

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

548(a)(1)(B).  The transfers are believed to be an amount in excess of $35 million, subject to proof.

## FIFTH CLAIM FOR RELIEF

### (Against All Defendants)

### *Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 550 and 551*

150.  The Trustee hereby incorporates all of the foregoing and subsequent paragraphs as if alleged herein.

151.  The avoidable transfers described in the Third and Fourth Causes of Action, to the extent that the Trustee prevails in such causes of action, should be avoided, recovered, and preserved for the benefit of the Estate as provided in 11 U.S.C. sections 550 and 551.  In particular, RDI has a right to the transferred property itself—including ownership and management of the Beachcomber, Shake Shack, and Lighthouse restaurants, including all LLC interests, and to the lease extension in the Sub-SubConcession Agreement—and all such property should be held in constructive trust.

## SIXTH CLAIM FOR RELIEF

### (Against All Defendants)

### *Avoidance and Recovery of Actually Fraudulent Transfers Pursuant to 11 U.S.C. § 544 and Cal. Civ. Code § 3439.04*

152.  The Trustee hereby incorporates all of the foregoing and subsequent paragraphs as if alleged herein.

153.  Pursuant to 11 U.S.C. section 544, the Trustee may allege any cause of action available under applicable state law to a creditor of the debtor, including claims for relief under the California Uniform Voidable Transfers Act.

154.  As described herein, Cavanaugh and Kosmides caused RDI to make transfers of company property to themselves or for their benefit and for other purposes that were not in the best interest of RDI and that damaged RDI and its creditors, including but not limited to the Transferred Assets.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    155.  These Transferred Assets should have, and would have, been property

2    of the RDI Estate, and the debts were incurred against property that should have, or

3    would have, been property of the RDI Estate.

4    156.  RDI has been insolvent since at least 2005; that is, its debts exceeded

5    its assets since at least that time.  Cavanaugh and Kosmides were both well aware

6    that RDI was insolvent – they exercised complete control over RDI's finances.

7    157.  Cavanaugh and Kosmides knew that each of the Transferred Assets

8    constituted valuable assets that could have been used to build up RDI, or, at a

9    minimum, pay off its debts.

10   158.  Rather than use the Transferred Assets for the benefit of RDI, however,

11   Cavanaugh and Kosmides used the Transferred Assets to enrich themselves and/or

12   build up other business enterprises in which they held a controlling interest.

13   159.  As detailed herein, RDI did not receive reasonably equivalent value in

14   exchange for any of the Transferred Assets.  Indeed, there was no legitimate

15   business purpose for RDI to transfer these assets.

16   160.  Cavanaugh and Kosmides' fraudulent intent is further evidenced by

17   their brazen and improper bookkeeping practices.  RDI, under the direction of

18   Cavanaugh and Kosmides, kept two sets of financial records – one that was

19   accurate, and another that painted a rosier picture of the companies' financial

20   wellbeing.

21   161.  Further, Cavanaugh and Kosmides knew exactly what they were doing

22   when they, for example, unilaterally recharacterized more than one and a half

23   million dollars' worth of loans to themselves as "distributions," thus "zeroing out"

24   money they themselves owed to the Company.  They made these

25   recharacterizations at a time when they already knew that RDI was headed for

26   bankruptcy, in an attempt to hide these assets from the bankruptcy court.

27   162.  The circumstances surrounding the transfers and fraudulent

28   bookkeeping practices as described herein evidence that the transfers were made,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

and these debts incurred, with actual intent to hinder, delay or defraud RDI's creditors.

163.  These transfers and debts are thus avoidable pursuant to California Civil Code section 3439.04.

164.  As a result of Cavanaugh and Kosmides's conduct, the Estate has been damaged in an amount to be proven at trial, but believed to be in excess of $35 million, and is entitled to the remedies set forth under California Civil Code section 3439.07, including but not limited to, provisional remedies and avoidance of the transfers.

165.  The wrongful conduct of Cavanaugh and Kosmides as alleged in this cause of action, was willful, wanton, malicious, oppressive, outrageous and fraudulent, and justifies an award of punitive damages in an amount sufficient to punish said defendants and deter future conduct of this type.

## SEVENTH CLAIM FOR RELIEF

### (Against All Defendants)

*Avoidance and Recovery of Constructively Fraudulent Transfers Pursuant to 11 U.S.C. § 544 and Cal. Civ. Code § 3439.05*

166.  The Trustee hereby incorporates all of the foregoing and subsequent paragraphs as if alleged herein.

167.  Pursuant to 11 U.S.C. section 544, the Trustee may allege any cause of action available under applicable state law to a creditor of the debtor, including claims for relief under the California Uniform Voidable Transfers Act.

168.  As described herein, Cavanaugh and Kosmides caused RDI to make transfers of company property to themselves or for their benefit and for other purposes that were not in the best interest of RDI and that damaged RDI and its creditors, including but not limited to the Transferred Assets.

169.  These Transferred Assets should have, and would have, been property of the RDI Estate, and the debts were incurred against property that should have, or

1   would have, been property of the RDI Estate.

2        170.  RDI received less than reasonably equivalent value in exchange for

3   these transfers and debts.

4        171.  For reasons described herein, RDI was insolvent at all times relevant

5   for this action.

6        172.  These transfers and debts had a prejudicial effect on RDI's financial

7   condition.

8        173.  These transfers and debts are thus avoidable pursuant to California

9   Civil Code section 3439.05.

10       174.  As a result of Cavanaugh and Kosmides's conduct, the Estate has been

11  damaged in an amount to be proven at trial, but believed to be in excess of $15

12  million, and is entitled to the remedies set forth under California Civil Code section

13  3439.07, including but not limited to, provisional remedies and avoidance of the

14  transfers.

15       175.  The wrongful conduct of Cavanaugh and Kosmides as alleged in this

16  cause of action, was willful, wanton, malicious, oppressive, outrageous and

17  fraudulent, and justifies an award of punitive damages in an amount sufficient to

18  punish said defendants and deter future conduct of this type.

19                    **EIGHTH CLAIM FOR RELIEF**

20                 **(Against Cavanaugh and Kosmides)**

21   ***Recovery of Illegal Dividends under Cal. Corp. Code §§ 500, 501 and 506***

22       176.  The Trustee hereby incorporates all of the foregoing and subsequent

23  paragraphs as if alleged herein.

24       177.  At all times through the date on which RDI filed its Disclosure

25  Statement, Cavanaugh and Kosmides caused RDI to make shareholder distributions

26  to themselves or for their personal benefit (the "Distributions") in excess of the

27  amount allowable under California Corporations Code sections 500 *et seq.*  In

28  doing so, at all relevant times Cavanaugh and Kosmides had knowledge of facts

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  indicating that RDI then was, or as a result of such distributions would be, unable

2  to meet its liabilities as they matured, and were aware of the impropriety of those

3  distributions given the insolvent financial state of RDI.  *Fed. Sav. & Loan Ins.*

4  *Corp. v. Molinaro*, 901 F.2d 1490, 1493 (9th Cir. 1990).

5  ## NINTH CLAIM FOR RELIEF

6  ### (Against All Defendants)

7  ### *Equitable Subordination of Claims Pursuant to 11 U.S.C. § 510(c)*

8  178.  The Trustee hereby incorporates all of the foregoing and subsequent

9  paragraphs as if alleged herein.

10  179.  As the key officers and persons in charge of RDI's business and

11  financial affairs, at all relevant times Cavanaugh and Kosmides each owed the

12  duties of a fiduciary to RDI, including the duties of undivided loyalty to RDI and to

13  act in its best interest, which prohibited them from undertaking or participating in

14  activities adverse to the interests of RDI and its creditors, and the duty to account to

15  RDI and keep it fully informed as to all matters pertaining to its interests.  Because

16  Cavanaugh and Kosmides were ultimately responsible for overseeing the day-to-

17  day business operations and financial performance of RDI and directly supervised

18  all aspects of RDI's financial affairs, at all relevant times, they were aware of its

19  dire financial condition and insolvency.  Despite this knowledge, Cavanaugh and

20  Kosmides caused RDI to make the above-described distributions to themselves or

21  for their benefit and to the other defendants in violation of RDI's rights and

22  obligations to its creditors.  In so doing, Cavanaugh and Kosmides each breached

23  his fiduciary duties to RDI, and directly and proximately caused, or was a

24  substantial factor in causing, damage to RDI and its creditors in the amount of the

25  transfers made by RDI to them or for their own benefit and to the other defendants.

26  180.  11 U.S.C. section 510(c) provides:

27      Notwithstanding subsections (a) and (b) of this section,
       after notice and a hearing, the court may--(1) under
28      principles of equitable subordination, subordinate for

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  |  purposes of distribution all or part of an allowed claim to
2  |  all or part of another allowed claim or all or part of an
   |  allowed interest to all or part of another allowed interest.

3

4   181.  At all relevant times, Cavanaugh and Kosmides engaged in inequitable

5  conduct toward RDI by pilfering the assets of an undercapitalized and insolvent

6  corporation for their own benefit, including the wrongful conduct described

7  throughout this Complaint, which has resulted in injury to RDI and its creditors.

8  Among other wrongful conduct, in breach of their fiduciary duties to RDI and its

9  creditors, Cavanaugh and Kosmides improperly placed their own interests (and the

10  interests of the Non-Debtor Entities) over the interests of RDI and its creditors.

11  This inequitable conduct has resulted in harm to RDI, its creditors and the RDI

12  Debtors' Estates in that RDI's general unsecured creditors are less likely to recover

13  the full amounts owed to them because of Cavanaugh and Kosmides' wrongful

14  conduct.

15   182.  Principles of equitable subordination require that any and all claims,

16  whether or not yet filed of record, of Cavanaugh and Kosmides (and the Non-

17  Debtor Entities) against the RDI Debtors' Estates be equitably subordinated to the

18  allowed general unsecured claims against those Estates, and such equitable

19  subordination is consistent with the provisions and purposes of the Bankruptcy

20  Code.

21   183.  Therefore, the Court should equitably subordinate any and all claims of

22  Cavanaugh, Kosmides, the Non-Debtor Entities against the RDI Debtors' Estates to

23  the allowed general unsecured claims against those Estates.

24  ## **TENTH CLAIM FOR RELIEF**

25  ### **(Against all Defendants)**

26  ### ***Permanent Injunction Pursuant to Cal. Civ. Code § 3439.07(a)(3)(A)***

27   184.  The Trustee hereby incorporates all of the foregoing and subsequent

28  paragraphs as if alleged herein.

185.  The applicable principles of equity dictate that Defendants be permanently enjoined from directly or indirectly transferring, selling, assigning, pledging, hypothecating, encumbering, dissipating, distributing or moving the assets of the RDI Debtors' Estates which have been transferred to Defendants by RDI via the machinations of Cavanaugh and Kosmides.

186.  Therefore, the Court should permanently enjoin Defendants from directly or indirectly transferring, selling, assigning, pledging, hypothecating, encumbering, dissipating, distributing or moving the Transferred Assets of the RDI Estates.

## ELEVENTH CLAIM FOR RELIEF

### (Against all Defendants)

### *Permanent Injunction Pursuant to Cal. Civ. Code § 3439.07(a)(3)(C)*

187.  The Trustee hereby incorporates all of the foregoing and subsequent paragraphs as if alleged herein.

188.  The applicable principles of equity dictate that Defendants be permanently enjoined from directly or indirectly transferring, selling, assigning, pledging, hypothecating, encumbering, dissipating, distributing or moving their own personal assets, except as necessary in the ordinary course of business or to fulfill normal living expenses, until judgment in this proceeding has been satisfied.

189.  Therefore, the Court should permanently enjoin Defendants from directly or indirectly transferring, selling, assigning, pledging, hypothecating, encumbering, dissipating, distributing or moving their own personal assets, except as necessary in the ordinary course of business or to fulfill normal living expenses, until judgment in this proceeding has been satisfied.

## TWELFTH CLAIM FOR RELIEF

### (Against Cavanaugh and Kosmides)

### *Breach of Contract*

190.  The Trustee hereby incorporates all of the foregoing and subsequent

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    paragraphs as if alleged herein.

2        191.  RDI entered into contracts with each of Cavanaugh and Kosmides,

3    whereby RDI agreed, at Defendants' request, to provide the Personal Loans to

4    Cavanaugh and Kosmides in exchange for their promise to repay the loans.

5        192.  This agreement, whether express or implied, is evidenced by the

6    recording of salary advances and loans to Cavanaugh and Kosmides on RDI's

7    financial statements (during the time period that Cavanaugh and Kosmides

8    controlled RDI and prepared its financial statements), as well as communications

9    between Cavanaugh and Kosmides and RDI employees.

10        193.  Cavanaugh and Kosmides have failed to repay the salary advances,

11    loans, and interest due to RDI under the agreements for the Personal Loans, and are

12    therefore in default.

13        194.  Although Cavanaugh and Kosmides purported to discharge the

14    Personal Loans approximately two months prior to the bankruptcy filing when they

15    purported to re-characterize and backdate the loans, this conduct was a fraudulent

16    transfer.  As such, it is voidable and these monies remain due and owing.

17        195.  RDI is entitled to an amount to be proven at trial, but believed to be in

18    excess of $1,690,782.87—$1,029,198.96 as to Cavanaugh and $661,583.91 as to

19    Kosmides.  An accounting is necessary to ascertain the full amounts owed.

20        196.  Moreover, RDI is entitled to prejudgment interest on these loans at the

21    statutory rate.

22                    **THIRTEENTH CLAIM FOR RELIEF**

23                    **(Against Cavanaugh and Kosmides)**

24                            ***Money Lent***

25        197.  The Trustee hereby incorporates all of the foregoing and subsequent

26    paragraphs as if alleged herein.

27        198.  RDI is entitled to an amount to be proven at trial, but believed to be in

28    excess of $1,690,782.87—$1,029,198.96 as to Cavanaugh and $661,583.91 as to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  Kosmides.  An accounting is necessary to ascertain the full amounts owed.

2  199.  Accordingly, the Trustee seeks damages in an amount to be proven at
3  trial for the Personal Loans.

4  200.  Moreover, RDI is entitled to prejudgment interest on these loans at the
5  statutory rate.

6  ## FOURTEENTH CLAIM FOR RELIEF

7  ### (Against Cavanaugh and Kosmides)

8  ### *Open Book Account*

9  201.  The Trustee hereby incorporates all of the foregoing and subsequent
10  paragraphs as if alleged herein.

11  202.  Throughout the course of its relationship with Cavanaugh and
12  Kosmides, RDI has recorded the amounts due and the amounts paid by the parties
13  on the Personal Loans in RDI's financial records.  The detailed statements recorded
14  by RDI were entered in the regular course of business in a reasonably permanent
15  manner.

16  203.  RDI is entitled to an amount to be proven at trial, but believed to be in
17  excess of $1,690,782.87—$1,029,198.96 as to Cavanaugh and $661,583.91 as to
18  Kosmides.  An accounting is necessary to ascertain the full amounts owed.

19  204.  Cavanaugh and Kosmides have not repaid the Personal Loans.

20  205.  Moreover, RDI is entitled to prejudgment interest on these loans at the
21  statutory rate.

22  ## FIFTEENTH CLAIM FOR RELIEF

23  ### (Against all Defendants)

24  ### *Violation of Cal. Penal Code § 496(c)*

25  206.  The Trustee hereby incorporates all of the foregoing and subsequent
26  paragraphs as if alleged herein.

27  207.  California Penal Code section 496(a) imposes criminal penalties
28  against any person "who buys or receives any property that has been stolen or that

1  has been obtained in any manner constituting theft or extortion, knowing the

2  property to be so stolen or obtained, or who conceals, sells, withholds, or aids in

3  concealing, selling, or withholding any property from the owner, knowing the

4  property to be so stolen or obtained."

5      208.  California Penal Code section 496(c) permits "[a]ny person who has

6  been injured by a violation of subdivision (a) . . . [to] bring an action for three times

7  the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and

8  reasonable attorney's fees."

9      209.  As set forth above, Cavanaugh and Kosmides stole the Transferred

10  Assets.

11      210.  Cavanaugh and Kosmides have received and withheld the Transferred

12  Assets from Debtors.

13      211.  RDI Debtors' Estates were damaged by the theft and withholding of the

14  Transferred Assets.

15      212.  The foregoing conduct was the direct and proximate cause of the RDI

16  Debtors' Estates' damages in an amount to be determined at trial.  Under California

17  Penal Code section 496(c), the RDI Debtors' Estates are entitled to three times the

18  amount of their actual damages, plus costs and attorneys' fees.

19  **<u>SIXTEENTH CLAIM FOR RELIEF</u>**

20  **(Against All Defendants)**

21  ***Accounting***

22      213.  The Trustee hereby incorporates all of the foregoing and subsequent

23  paragraphs as if alleged herein.

24      214.  The intermingling of funds and assets was substantial as between RDI

25  and all Defendants.  There are frequent transfers of funds between the Parties.

26  RDI, under the direction of Cavanaugh and Kosmides, kept two sets of financial

27  records which further complicates determining the financial relationships among

28  the Parties.  And generally acceptable principles of accounting were not followed.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

215.  A full and complete accounting is therefore necessary to determine the amount of money, assets and property belonging to RDI and owed respectively to RDI by each Defendant.

## SEVENTEENTH CLAIM RELIEF

### (Against All Defendants)

### *Constructive Trust*

216.  The Trustee hereby incorporates all of the foregoing and subsequent paragraphs as if alleged herein.

217.  The Court should impose a constructive trust over all property fraudulently transferred or business opportunities usurped by RDI.  This constructive trust necessarily includes ownership and management of the Beachcomber, Shake Shack and Lighthouse restaurants, as permitted by applicable law, including under California Civil Code section 2224.

## EIGHTEENTH CLAIM FOR RELIEF

### (Against All Defendants)

### *Misappropriation of Trade Secrets*

218.  The Trustee hereby incorporates all of the foregoing and subsequent paragraphs as if alleged herein.

219.  RDI's trade secrets include its know-how, pricing, methods for obtaining restaurant opportunities, and other insider knowledge for operating period-specific restaurant operations.

220.  These trade secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.  These trade secrets are neither generally known nor easily discoverable by RDI's competitors.

221.  RDI developed these trade secrets through substantial time, expense, effort and labor.

222.  Defendants misappropriated trade secrets to develop and run competing

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  restaurants including Beachcomber, Shake Shack, and Lighthouse.

2      223.  As a direct and proximate result of these misappropriations, Defendants

3  have been unjustly enriched and the Estate is entitled to recover that unjust

4  enrichment pursuant to Civil Code section 3426.3(a).

5                    **PRAYER FOR RELIEF**

6      **WHEREFORE**, the Trustee, on behalf of the RDI Estate, prays for judgment

7  against the Defendants, and each of them, as follows:

8      1)  Judgment against Defendants for compensatory and exemplary

9          damages in amounts to be determined at trial;

10     2)  Avoidance and recovery of all fraudulent transfers as described

11         herein;

12     3)  Judgment against Defendants for the recovery of the amount of

13         improper distributions to them or for their personal benefit in

14         amounts to be determined at trial;

15     4)  Judgment equitably subordinating any and all claims, whether filed

16         of record or hereafter asserted, of the named and hereafter named

17         Defendants against the Estate to the allowed general unsecured

18         claims against the Estate;

19     5)  A permanent injunction preventing the named and hereafter named

20         Defendants from directly or indirectly transferring, selling, assigning,

21         pledging, hypothecating, encumbering, dissipating, distributing, or

22         moving assets of the RDI Estate until judgment in this proceeding

23         has been satisfied;

24     6)  A permanent injunction preventing the named and hereafter named

25         Defendants from directly or indirectly transferring, selling, assigning,

26         pledging, hypothecating, encumbering, dissipating, distributing, or

27         moving their personal assets, except as necessary in the ordinary

28         course of business or for normal living expenses, until judgment in

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    this proceeding has been satisfied;

2    7)    For treble damages;

3    8)    For punitive damages;

4    9)    For prejudgment and post-judgment interest at the legal rate on all

5    damages and sums awarded to the Trustee, for the benefit of the

6    Estate;

7    10)    For constructive trust, including over all transferred assets and

8    opportunities, to be held for the benefit of RDI;

9    11)    For attorneys' fees and costs; and

10    12)    For such other relief as the Court deems proper.

11

12    DATED: March 11, 2021    Respectfully submitted,

13    MILLER BARONDESS, LLP

14

15

16    By:    /s/ Christopher D. Beatty

17    CHRISTOPHER D. BEATTY
    Attorneys for Plaintiff Richard A.

18    Marshack, in his capacity as the duly
    appointed Chapter 7 Trustee of the

19    Bankruptcy Estate of RUBY'S DINER,

20    INC.

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## **DEMAND FOR JURY TRIAL**

Plaintiff Richard A. Marshack, in his capacity as the duly appointed Chapter 7 Trustee of the Bankruptcy Estate of Ruby's Diner, Inc., hereby demands a trial by jury.

DATED: March 11, 2021                    Respectfully submitted,

                                         MILLER BARONDESS, LLP


                                         By:  /s/ Christopher D. Beatty
                                              CHRISTOPHER D. BEATTY
                                              Attorneys for Plaintiff Richard A.
                                              Marshack, in his capacity as the duly
                                              appointed Chapter 7 Trustee of the
                                              Bankruptcy Estate of RUBY'S DINER,
                                              INC.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400